# In the United States Court of Federal Claims

No. 16-257
Filed: March 20, 2017

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| NICHOLAS HINDMAN, | 5 U.S.C. § 5305 (Special Rates Of Pay); |
| Plaintiff, | 5 U.S.C. § 5596 (Back Pay Act); |
| | 5 U.S.C § 5754 (Federal Workforce Flexibility Act of 2004, Retention Bonuses); |
| v. | 28 U.S.C. § 1491 (Tucker Act Jurisdiction); |
| THE UNITED STATES, | 5 C.F.R §§ 530.301–309 (Special Rates of Pay) |
| Defendant. | 5 C.F.R. §§ 575.301–314 (Retention Incentives); |
| | Rules of the United States Court of Federal Claims ("RCFC") 12(b)(1), 12(b)(6). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Timothy A. Bridge**, St. Charles, Illinois, Counsel for Plaintiff.

**Jimmy S. McBirney**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN**, *Chief Judge.*

## I.    RELEVANT FACTUAL BACKGROUND.[1]

On January 3, 2010, the United States Department of Veterans Affairs ("VA") hired Nicholas Hindman and assigned him to the Edward Hines Jr. VA Hospital ("the VA Hospital"). Compl. ¶ 5.  The VA employed Mr. Hindman as a Law Enforcement Officer ("LEO"), pursuant

---

[1] The relevant facts discussed herein were derived from: the February 24, 2016 Complaint ("Compl."); the Exhibits attached to the Government's August 2, 2016 Motion To Dismiss ("Gov't Mot. Exs. A–C"); and the Exhibits attached to Plaintiff's August 17, 2016 Response ("Pl. Resp. Exs. A–C")

to 5 U.S.C. § 4521[2] and 5 U.S.C. § 5541(3),[3] from January 3, 2010 to January 3, 2016.  Compl. ¶ 5.  The United States Office of Personnel Management ("OPM") authorized the VA Hospital to

---

[2] Section 4521 of the Treasury, Postal Service, and General Government Appropriations Act, as amended, in relevant part provides:

> For the purpose of this subchapter, the term "law enforcement officer" means—
> (1) a law enforcement officer within the meaning of section 5541(3) and to whom the provisions of chapter 51 apply;
> (2) a member of the United States Secret Service Uniformed Division;
> (3) a member of the United States Park Police;
> (4) a special agent in the Diplomatic Security Service;
> (5) a probation officer (referred to in section 3672 of title 18); and
> (6) a pretrial services officer (referred to in section 3153 of title 18).

5 U.S.C. § 4521.

[3] Section 5541(3) of Title 5, as amended, in relevant part provides:

> "[L]aw enforcement officer" means an employee who—
> (A) is a law enforcement officer within the meaning of section 8331(20) or 8401(17);
> (B) in the case of an employee who holds a supervisory or administrative position and is subject to subchapter III of chapter 83, but who does not qualify to be considered a law enforcement officer within the meaning of section 8331(20), would so qualify if such employee had transferred directly to such position after serving as a law enforcement officer within the meaning of such section;
> (C) in the case of an employee who holds a supervisory or administrative position and is subject to chapter 84, but who does not qualify to be considered a law enforcement officer within the meaning of section 8401(17), would so qualify if such employee had transferred directly to such position after performing duties described in section 8401(17)(A) and (B) for at least 3 years; and
> (D) in the case of an employee who is not subject to subchapter III of chapter 83 or chapter 84—
>> (i) holds a position that the Office of Personnel Management determines would satisfy subparagraph (A), (B), or (C) if the employee were subject to subchapter III of chapter 83 or chapter 84; or
>> (ii) is a special agent in the Diplomatic Security Service.

5 U.S.C. § 5541(3).

Sections 8331 and 8401 of Title 5 further define "Law Enforcement Officer" as "an employee, the duties of whose position are primarily the investigation, apprehension or detention of individuals suspected or convicted of offenses against the criminal laws of the United States," and as "an employee, the duties of whose position are primarily . . . the protection of officials of the United States against threats to personal safety."  *See* 5 U.S.C §§ 8331(20), 8401(17)(A)(i)(II).

implement a group retention payment policy for LEOs, pursuant to 5 U.S.C. § 5754.[4] Compl. ¶ 6. Under the VA's Retention Incentive Policy ("the retention pay policy"), as set forth in VA Directive And Handbook 5007/46, *Pay Administration* ("the VA Handbook"), LEOs may be

---

The term "Law Enforcement Officer" is further defined by the United States Office of Personnel Management in 5 C.F.R. § 550.103, and that regulation, in relevant part, provides:

Law enforcement officer means an employee who—

(1) Is a law enforcement officer within the meaning of 5 U.S.C. § 8331(20) (as further defined in § 831.902 of this chapter) or 5 U.S.C. § 8401(17) (as further defined in § 842.802 of this chapter), as applicable;

(2) In the case of an employee who holds a secondary position, as defined in § 831.902 of this chapter, and is subject to the Civil Service Retirement System, but who does not qualify to be considered a law enforcement officer within the meaning of 5 U.S.C. § 8331(20), would so qualify if such employee had transferred directly to such position after serving as a law enforcement officer within the meaning of such section;

(3) In the case of an employee who holds a secondary position, as defined in § 842.802 of this chapter, and is subject to the Federal Employees Retirement System, but who does not qualify to be considered a law enforcement officer within the meaning of 5 U.S.C. § 8401(17), would so qualify if such employee had transferred directly to such position after performing duties described in 5 U.S.C. § 8401(17)(A) and (B) for at least 3 years; and

(4) In the case of an employee who is not subject to either the Civil Service Retirement System or the Federal Employees Retirement System—

(i) Holds a position that the agency head (as defined in §§ 831.902 and 842.802 of this chapter) determines would satisfy paragraph (1), (2), or (3) of this definition if the employee were subject to the Civil Service Retirement System or the Federal Employees Retirement System (subject to OPM oversight as described in §§ 831.911 and 842.808 of this chapter); or

(ii) Is a special agent in the Diplomatic Security Service.

5 C.F.R. § 550.103.

[4] Section 5754(c) of the Federal Workforce Flexibility Act of 2004, in relevant part, provides:

[OPM] may authorize the head of an agency to pay retention bonuses to a group of employees in 1 or more categories of positions in 1 or more geographic areas, subject to the requirements of subsection (b)(1) and regulations prescribed by [OPM], if there is a high risk that a significant portion of employees in the group would be likely to leave in the absence of retention bonuses.

5 U.S.C. §5754(c).

eligible for additional retention pay after completing Law Enforcement Training and 90 days of employment.  VA Handbook pt. VI, ch. 3, § 6(d).[5]

On or about April 1, 2010, Mr. Hindman completed Law Enforcement Training and 90 days of continuous employment as a LEO.  Compl. ¶ 7.  The first pay period following this date was on April 10, 2010.  Compl. ¶ 7.  Although Mr. Hindman satisfied the conditions required by the retention pay policy, the VA Hospital failed to pay Mr. Hindman retention pay from April 20, 2010 to November 20, 2011.  Compl. ¶ 10.  The VA Hospital also provided no excuse or explanation for failure to pay Mr. Hindman retention pay.  Compl. ¶ 10.

On July 1, 2015, counsel for Mr. Hindman submitted a demand letter to the VA Hospital for earned, but unpaid, retention pay for FY 2010–11.  Pl. Resp. Ex. A.  On July 22, 2015, the Acting Hospital Director responded as follows:

> Based on Officer Hindman's records he would have become eligible to receive retention after April 1, 2010, after he had completed the Law Enforcement Training Center and reached his 90th day of employment.  The first pay period following this date began on April 10, 2010.  However according to the review retention was not made effective for Officer Hindman until November 20, 2011.
>
> Our Human Resources Office will work with our payroll office to determine exact calculations regarding the retention pay the Officer Hindman did not receive.  Although, per policy retention incentives cannot be paid retroactively, arrangements can be made to pay the amount identified in this review as a lump sum payment.

Pl. Resp. Ex. B.

To date, the VA Hospital continues to refuse to pay Mr. Hindman retention pay earned between April 10, 2010 and November 20, 2011.  Compl. ¶ 10.

## II.   PROCEDURAL HISTORY.

On July 1, 2015, Mr. Hindman filed a complaint, pursuant to the  Equal Employment Opportunity Act ("EEOA"), with the VA Office of Resolution Management ("ORM") seeking back pay for his retention bonuses and alleging discrimination based on his race and sex.  Gov't Mot. Ex. B at 2.  The ORM subsequently conducted an investigation.  Gov't Mot. Ex. B at 2.

---

[5] The VA Handbook, Part VI Chapter 3 § 6(d), in relevant part, provides:

> A new employee who enters on duty after the approval of a group retention incentive or who transfers into a position covered by a group retention incentive must serve at least 90 days before being authorized a group incentive.  When defining the criteria for a group incentive approving officials may establish a minimum service requirement longer than 90 days.

VA Directive And Handbook 5007/46, *Pay Administration*, pt. VI, ch. 3, § 6(d).

When the investigation concluded, the VA notified Mr. Hindman in writing of the right to request a hearing and a decision by an Equal Employment Opportunity Commission ("EEOC") Administrative Law Judge.  Gov't Mot. Ex. B at 2.  Mr. Hindman requested a hearing before an EEOC Administrative Law Judge, and, on January 20, 2016, the EEOC Administrative Law Judge issued an order acknowledging Mr. Hindman's complaint.  Gov't Mot. Ex. A. at 1.

On February 24, 2016, Mr. Hindman ("Plaintiff") filed a Complaint in the United States Court of Federal Claims alleging that the VA engaged in an unjustified or unwarranted personnel action.  Compl. ¶ 13.  The February 24, 2016 Complaint seeks relief under the Back Pay Act, 5 U.S.C. § 5596,[6] in the amount of $8,160.20 for unpaid LEO retention bonus pay earned between April 1, 2010 and November 20, 2011, plus interest and attorney's fees.  Compl. ¶ 15.

On May 23, 2016, the EEOC Administrative Law Judge issued a procedural decision dismissing Plaintiff's EEOA complaint, pursuant to 29 C.F.R. § 1614.107(a)(3),[7] because

---

[6] Section 5596(b)(1) of the Back Pay Act, in relevant part, provides:

An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee—

    (A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect—

        (i) an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period; and

        (ii) reasonable attorney fees related to the personnel action which, with respect to any decision relating to an unfair labor practice or a grievance processed under a procedure negotiated in accordance with chapter 71 of this title, or under chapter 11 of title I of the Foreign Service Act of 1980, shall be awarded in accordance with standards established under section 7701(g) of this title[.]

5 U.S.C. § 5596(b)(1).

[7] 29 C.F.R. § 1614.107(a)(3) in relevant part provides:

(a) Prior to a request for a hearing in a case, the agency shall dismiss an entire complaint . . .
(3) That is the basis of a pending civil action in a United States District Court in which the complainant is a party provided that at least 180 days have passed since the filing of the administrative complaint, or that was the basis of a civil action decided by a United States District Court in which the complainant was a party[.]

Plaintiff's February 14, 2016 Complaint in the United States Court of Federal Claims concerned the same underlying issues as the administrative EEOA complaint. Gov't Mot. Ex. A at 3. The Office of Employment Discrimination Complaint Adjudication ("OEDCA") received the judge's decision on June 1, 2016. Gov't Mot. Ex. B at 2. On June 13, 2016, OEDCA entered a final order finding that the EEOC Administrative Law Judge's decision was factually and legally correct and dismissing Plaintiff's EEOA complaint. Gov't Mot. Ex. B at 3. On July 1, 2016, Plaintiff appealed the dismissal to the EEOC. Gov't Mot. Ex. C at 1.

On August 2, 2016, the Government filed a Motion To Dismiss the February 24, 2016 Complaint ("Gov't Mot.") for lack of jurisdiction, pursuant to Rule of the United States Court of Federal Claims ("RCFC") 12(b)(1), and for failure to state a claim upon which relief could be granted, pursuant to RCFC 12(b)(6). ECF No. 10. On August 17, 2016, Plaintiff filed a Response/Objection To Defendant's Motion To Dismiss ("Pl. Resp."). ECF No. 14. On August 29, 2016, the Government filed a Reply In Support Of Defendant's Motion To Dismiss ("Gov't Reply"). ECF No. 15.

On January 10, 2017, the court issued a Memorandum Opinion And Order Regarding Jurisdictional Facts Required. *See Hindman v. United States,* No. 16-257, 2017 WL 104489, at *1 (Fed. Cl. Jan. 10, 2017). By that Memorandum Opinion and Order, the court informed the Government that the court required certain documents to adjudicate the issue of jurisdiction, including: (1) the VA Hospital's Group Authorization of "retention bonuses" for LEOs; (2) the Retention Service Agreement, signed by Plaintiff; and (3) any other relevant documents concerning the VA Hospital's "retention bonus" policy. *Id.* at *1.

On January 25, 2017, Plaintiff filed a Supplemental Exhibit in Response to the Government's August 2, 2016 Motion To Dismiss ("Pl. Mot."), attaching an August 14, 2008 "Revised Letter" to a newly hired LEO, as evidence of the VA Hospital's retention policy. Pl. Mot. Ex. 1. In that Response, Plaintiff also requested an amendment to the court's January 10, 2017 Order to direct the Government to submit: "All documents reflecting the payment of retention incentive payments (and the amount thereof) paid to Police Officers hired and employed at Edward Hines Jr. VA Hospital for each year during the period 2008 to the present." Pl. Mot. at 1. In the alternative, Plaintiff requested leave to propound a request for production of the aforementioned documents, to supplement Plaintiff's August 17, 2017 Response to the Government's August 2, 2016 Motion To Dismiss. Pl. Mot. at 2.

On February 3, 2017, the Government filed a Reply to Plaintiff's Supplemental Response ("2/3/17 Gov't Reply"), arguing that the additional discovery sought by Plaintiff was irrelevant to the jurisdictional issue before the court. 2/3/17 Gov't Reply at 4.

On February 28, 2017, the court issued a Memorandum Opinion and Order, declining to authorize the additional discovery requested by Plaintiff, but reaffirming the court's January 10, 2017 Memorandum Opinion And Order Regarding Jurisdictional Facts Required. *See Hindman v. United States*, No. 16-257, 2017 WL 770682, at *2 (Fed. Cl. Feb. 28, 2017).

---

29 C.F.R. § 1614.107(a)(3).

On March 10, 2017, the Government filed a Submission Of Documents In Response To The Court's January 10, 2017 Memorandum Opinion And Order ("Gov't Sub."), attaching:

- the VA Hospital's November 4, 2011 "Group Retention Incentive Request" for LEOs, approved by Hospital Director Sharon M. Helman (Gov't Sub. Ex. at 1–2);[8]

- the VA Hospital's July 13, 2014 "Authorization And Review Of Retention Incentive," that extended the group retention bonus authorization through July 11, 2015 (Gov't Sub. Ex. at 3–5);

- the VA Hospital's August 9, 2015 "Authorization And Review Of Retention Incentive," that extended the group retention bonus authorization through August 6, 2016 (Gov't Sub. Ex. at 6–8);

- Plaintiff's September 12, 2014 Retention Service Agreement for the period of September 21, 2014 through September 19, 2015, approved on September 25, 2014 (Gov't Sub. Ex. at 9);

- Plaintiff's June 15, 2015 Retention Service Agreement for the period of July 12, 2015 through July 9, 2016, approved on June 17, 2015 (Gov't Sub. Ex. at 10); and

- the VA's July 1, 2013 Standard Operating Procedure ("SOP") 575-3, Procedures For Administering The Retention Incentive Process (Gov't Sub. Ex. at 11–43).

## III. DISCUSSION.

### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

Therefore, to pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act . . . ."); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must

---

[8] This document evidences a signature date of November 4, 2011. Gov't Sub. Ex. at 1.

identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (quoting *Testan*, 424 U.S. at 400). When a plaintiff invokes a money-mandating statute and makes a non-frivolous assertion that he is entitled to relief under that statute, the United States Court of Appeals for the Federal Circuit has held that the United States Court of Federal Claims has jurisdiction to adjudicate the claims in the complaint. *See Fisher v. United States*, 402 F.3d 1167, 1172–76 (Fed. Cir. 2005) (holding that the United States Court of Federal Claims had jurisdiction to adjudicate a well-pleaded, non-frivolous complaint, grounded on a statute that was "reasonably amenable" to being read as mandating compensation).

In this case, Plaintiff has not met his burden to establish jurisdiction, as explained below.

### B.     Standard of Review Under RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: (1) lack of jurisdiction over the subject matter[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations of the complaint to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

### C.     Standard of Review Under RCFC 12(b)(6).

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . is raised by a [Rule] 12(b)(6) motion[.]" *Palmer*, 168 F.3d at 1313; *see also* RCFC 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]").

When considering whether to dismiss an action for failure to state a claim, the court must assess whether "a claim has been stated adequately" and then whether "it may be supported by [a] showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The plaintiff's factual allegations must be substantial enough to raise the right to relief "above the speculative level." *Id.* at 555. The court must accept all factual allegations in the complaint as true and make all reasonable inferences in favor of the plaintiff. *Id.*

### D.     The Government's August 2, 2016 Motion To Dismiss.

#### 1.     The Government's Argument.

The Government argues that the February 24, 2016 Complaint should be dismissed under RCFC 12(b)(1), because the court does not have jurisdiction. Gov't Mot. at 5. First, the Complaint

does not identify a separate, money-mandating source of substantive law since the Back Pay Act, 5 U.S.C. § 5596, "is not, by itself, a money-mandating source of law which would support a plaintiff's claims in this court under the Tucker Act." Gov't Mot. at 4 (quoting *Adde v. United States*, 81 Fed. Cl. 415, 417 (2008)). In other words, "[i]n addition to the Back Pay Act, a plaintiff must allege another source of law which requires a non-discretionary, virtually automatic payment which has not occurred." Gov't Mot. at 4–5 (quoting *Adde*, 81 Fed. Cl. at 417).

The claim alleged for damages under the Back Pay Act relies on "unpaid retention pay authorized pursuant to 5 U.S.C. § 5754." Gov't Mot. at 5 (citing Compl. ¶ 6). Section 5754's reference to "'may' in its provisions authorizing retention payments establishes a 'presumption that . . . the statute creates discretion.'" Gov't Mot. at 6 (quoting *Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006)). The Complaint also cites 5 U.S.C. § 5305 and the corresponding regulation, 5 C.F.R. § 530.303,[9] that are "arguably . . . money-mandating[.]" Gov't Mot. at 7. But, section 5305 does not apply to Plaintiff because the statute authorizes higher minimum pay rates for employees only where OPM "finds that the Government's recruitment or retention efforts with respect to 1 or more occupations in 1 or more areas or locations are, or are likely to become, significantly handicapped[.]" 5 U.S.C. § 5305(a). The Complaint does not claim entitlement to a higher minimum rate of pay under the conditions in section 5305,[10] but instead claims entitlement

---

[9] 5 C.F.R. § 530.303 in relevant part provides:

(a) Under 5 U.S.C. § 5305, OPM may establish special rates for employees paid under a statutory pay system (as defined in 5 U.S.C. § 5302(1)) or any other pay system established by or under Federal statute for civilian positions in the executive branch. . . .

(c) An agency must pay the applicable special rate to any employee who meets the coverage conditions established by OPM with respect to a special rate schedule unless an authorized agency official determines that a category of employees of the agency will not be covered by a proposed or existing special rate schedule . . . .

5 C.F.R. § 530.303.

[10] Section 5305(b) provides the circumstances under which OPM can find that recruitment or retention efforts are, or are likely to become, "significantly handicapped" under section 5305(a). Specifically, the circumstances are:

(1) rates of pay offered by non-Federal employers being significantly higher than those payable by the Government within the area, location, occupational group, or other class of positions under the pay system involved;
(2) the remoteness of the area or location involved;
(3) the undesirability of the working conditions or the nature of the work involved (including exposure to toxic substances or other occupational hazards); or
(4) any other circumstances which the Office of Personnel Management (or such other agency as the President may under the last sentence of subsection (a)(1) designate) considers appropriate.

to a retention bonus under section 5754, that authorizes retention bonuses where, "the unusually high or unique qualifications of the employee or a special need of the agency for the employee's services makes it essential to retain" the employee, and where absent a retention bonus the employee "would be likely to leave." Gov't Mot. at 7 (quoting 5 U.S.C. § 5754(b)). Because section 5305 does not apply, and section 5754 does not mandate compensation, the court does not have jurisdiction to adjudicate Plaintiff's claim under the Back Pay Act. Gov't Mot. at 9.

In the alternative, the February 24, 2016 Complaint "does not allege facts sufficient to prove [Plaintiff's] entitlement to retention pay." Gov't Mot. at 9. Although the VA created a group retention bonus policy, the February 24, 2016 Complaint does not allege that the VA created a policy that applied to Plaintiff, nor that Plaintiff satisfied the policy's terms. Gov't Mot. at 10. Specifically, the February 24, 2016 Complaint fails to allege that Plaintiff entered into a written service agreement with the VA, a requirement under section 5754. Gov't Mot. at 10. Therefore, the February 24, 2016 Complaint should be dismissed, pursuant to RCFC 12(b)(6). Gov't Mot. at 10.

## 2.    Plaintiff's Response.

Plaintiff responds that "a statute can be money-mandating even if the government enjoys some discretion under it." Pl. Resp. at 5 (quoting *Agwiak v. United States*, 347 F.3d 1375, 1380 (Fed. Cir. 2003)). The Back Pay Act, sections 5305 and 5754, and the implementing regulations together require compensation when an employee meets the coverage conditions set by OPM. Pl. Pl. Resp. at 8.

Section 5305 allows OPM to establish special rates for employees, when it finds "that the Government's recruitment or retention efforts with respect to 1 or more occupations in 1 or more locations are, or are likely to become, significantly handicapped" under enumerated circumstances. Pl. Resp. at 6 (quoting 5 U.S.C. § 5305(a)(1)). Under section 5305, "OPM may establish special rates for employees[.]" Pl. Resp. at 6 (quoting 5 C.F.R. § 530.303(a)). If OPM establishes a special rate for employees, the agency "must pay the applicable special rate to any employee who meets the coverage conditions established by OPM[.]" Pl. Resp. at 6 (quoting 5 C.F.R. § 530.303(a)). Therefore, although OPM's authority to establish special rates is discretionary, section 5305 mandates compensation, if OPM establishes a program and an employee meets the coverage conditions. Pl. Resp. at 7. Section 5305 applies to Plaintiff's claim, because the VA created a special rate of pay subject to certain coverage requirements, and Plaintiff met those coverage requirements. Pl. Resp. at 8.

Section 5754 also authorizes OPM to authorize the head of any agency to pay retention bonuses to a group of employees, if there is a high risk that a significant portion of the group would be likely to leave in the absence of retention bonuses. Pl. Resp. at 7 (citing 5 U.S.C. § 5754). The VA's published retention incentive regulations are authorized in part under section 5754. Pl. Resp. at 7–8. Therefore, sections 5754 and 5305 entitle Plaintiff to recover his earned and unpaid retention pay. Pl. Resp. at 8.

---

5 U.S.C. 5305(b).

Regarding the Government's argument that the February 24, 2016 Complaint fails to state a claim, the Complaint alleges that Plaintiff "completed Law Enforcement Training and 90 days of continuous employment as an LEO on or about April 1, 2010." Pl. Resp. at 9 (quoting Compl. ¶ 7). Accordingly, the February 24, 2016 Complaint sufficiently alleges satisfaction of the conditions necessary to recover unpaid retention bonus pay. Pl. Resp. at 9. Furthermore, Plaintiff does not need to show he entered into a written service agreement, because section 5754(d) provides an exception to that requirement if the agency pays a retention bonus in biweekly installments. Pl. Resp. at 7 (citing 5 U.S.C. 5754(d)(2)(B)(3)(A)). Finally, the VA committed an unjustified personnel action within the meaning of the Back Pay Act, when it failed to implement the Acting Hospital Director's administrative determination acknowledging Plaintiff's right to recover unpaid retention pay. Pl. Resp. at 9.

### 3.  The Government's Reply.

Plaintiff improperly conflates sections 5305 and 5754, but they are wholly independent and govern entirely different matters. Gov't Reply at 3. Plaintiff's claim is for discretionary retention bonus pay governed by the permissive language in section 5754; section 5305 contains no provision governing the retention bonus payments. Gov't Reply at 3–4. Instead, section 5305 governs locality-based comparability payments not at issue here. Gov't Reply at 3 n.1. The February 24, 2016 Complaint's "blanket assertion" that section 5305 applies, in fact "does nothing to actually assert a claim under that statute . . . let alone provide 'well-pleaded factual allegations' that might 'plausibly give rise to an entitlement to relief' under it." Gov't Reply at 4–5 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Regarding the RCFC 12(b)(6) Motion to Dismiss, the February 24, 2016 Complaint does not allege that Plaintiff entered into a written service agreement with the VA. Gov't Reply at 5. The February 24, 2016 Complaint also does not cite the exemption from that requirement under subsection 5754(d)(3)(A), that provides that a written service agreement is not required if the agency pays bonuses on a biweekly basis. Gov't Reply at 5. Accordingly, even if section 5754 were money-mandating, the February 24, 2016 Complaint nonetheless fails to plead facts sufficient to prove Plaintiff's entitlement to retention pay under section 5754. Gov't Reply at 7.

### E.  The Court's Resolution.

### 1.  The Back Pay Act Is Not Money-Mandating.

The Back Pay Act, 5 U.S.C. § 5596, is not, by itself, a money-mandating source of law that supports a claim under the Tucker Act. *See, e.g.*, *Spagnola v. Stockman*, 732 F.2d 908, 912 (Fed. Cir. 1984) (holding that the Back Pay Act is "'derivative,'" in that it only authorizes payment of back pay where another statute or regulation required payment, and the payment did not occur (quoting *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983) (*en banc*) ("The Back Pay Act is merely derivative in application; it is not itself a jurisdictional statue."))); *Shelleman v. United States*, 9 Cl. Ct. 452, 456 (1986) ("[T]he Back Pay Act is *derivative* in its reliance on other regulations and statutes to fix efficacious jurisdiction in this court . . . derivative statutes do not, *ipso facto*, create a right of action in the Claims Court.") (emphasis in original).

A discrete number of back pay disputes are cognizable in the United States Court of Federal Claims through a combination of the Tucker Act, the Back Pay Act, and a money-mandating

statute. *See Worthington v. United States*, 168 F.3d 24, 26 (Fed. Cir. 1999) (holding that appellant's Back Pay Act claim, based on an underlying violation of the Federal Employees Flexible and Compressed Work Schedules Act, 5 U.S.C. §§ 6120–6133, satisfied the "Act of Congress" prong of the Tucker Act to confer jurisdiction to the United States Court of Federal Claims).

Accordingly, for the court to exercise jurisdiction over a claim for back payment, the plaintiff must have alleged a money-mandating source of law independent from the Back Pay Act. *See Connolly*, 716 F.2d at 887–88 (holding that, because the Back Pay Act is not a jurisdictional statute, a violation of that Act alone did not provide the court with jurisdiction).

### 2.   5 U.S.C. § 5305 Does Not Require Payment Of Retention Bonuses.

The Government concedes that section 5305 is money-mandating, because it "compels payment once certain conditions precedent are met." Gov't Mot. at 7 (quoting *Doe v United States*, 463 F.3d 1314, 1324 (2006) (holding that a statute is money-mandating, even if the statute contains the word "may," if the statute compels payment once certain conditions precedent are met)) (internal quotation marks omitted); *see also Little v. United States*, 124 Fed. Cl. 256, 269 (2015) ("An employee who qualifies for an authorized special pay rate [under section 5305] has a right to be paid according to that rate."); 5 C.F.R. § 530.303(c) ("An agency *must* pay the applicable special rate [under section 5305] to any employee who meets the coverage conditions established by OPM[.]") (emphasis added). Section 5305, however, does not apply, because it applies only to "rates of basic pay," and a retention bonus is not part of an employee's rate of basic pay.

Section 5305, entitled "Special Pay Authority," authorizes OPM to "establish . . . higher minimum rates of pay for 1 or more grades or levels." 5 U.S.C. § 5305(a)(1). The implementing federal regulation clarifies that "[u]nder 5 U.S.C. § 5305, OPM may establish *special rates* for employees paid under a statutory pay system[.]" 5 C.F.R. § 530.303(a) (emphasis added). But, under 5 C.F.R. § 530.302, special rates of pay are considered to be part of a federal employee's "rate of basic pay." 5 C.F.R. § 530.302 defines "rate of basic pay" as "the rate of pay fixed by law or administrative action for the position held by an employee before any deductions, including a GS rate, an LEO special base rate, a locality rate, *a special rate under this subpart* or a similar rate under 38 U.S.C. § 7455, or a retained rate, but excluding additional pay of any other kind." (emphasis added). In other words, although section 5305 permits OPM to establish "special" rates, these "special rates" are considered part of a federal employee's "rate of basic pay." And, 5 U.S.C. 5754 expressly states that "[a] retention bonus is not part of the *basic pay* of an employee for any purpose." *Id.* § 5754(e)(3) (emphasis added).

Accordingly, section 5305 does not require the payment of retention bonuses, because it applies only to special rates for basic pay.

### 3.   5 U.S.C. § 5754 Is Not Money-Mandating As Applied To Plaintiff.

Plaintiff also argues that 5 U.S.C. § 5754 is money-mandating. Pl. Resp. at 7–8. The VA retention bonus program is authorized under section 5754. VA Handbook pt. VI, ch. 3, § 1(a) ("[Retention bonuses] are authorized under 5 U.S.C. [§] 5754[.]"); *see generally* 5 C.F.R. § 575.301–314. Section 5754, however, is not money-mandating, as applied to Plaintiff.

"A statute is not money-mandating when it gives the government complete discretion over the decision whether or not to pay an individual or group." *Doe v. United States*, 463 F.3d 1314, 1324 (Fed. Cir. 2006) (citing *Doe v. United States*, 100 F.3d 1576, 1582 (Fed. Cir. 1996)).  Use of the word "may" in a statute creates a "presumption of discretion." *Doe*, 463 F.3d at 1324 (citing *McBryde v. United States*, 299 F.3d 1357, 1362 (Fed. Cir. 2002) ("We . . . presume that when Congress used the word "may" in the statute in suit, we should use common sense and presume that the word conveys some degree of discretion.")).

In addition, a statute is not money-mandating when it "only authorizes but does not require the payment of money . . . and contemplates that further implementing regulations will be issued defining the circumstances in which money will be paid." *Roberts v. United States*, 745 F.3d 1158, 1165 (Fed. Cir. 2014).  In other words, if the statute provides that money will be paid only in accordance with implementing regulations and discretionary agency policy, then that statute is merely "money-authorizing," and does not have a money-mandating effect, standing by itself. *See Avecedo v. United States*, 824 F.3d 1365, 1369–70 (Fed. Cir. 2016).  For example, in *Avecedo*, the United States Court of Appeals for the Federal Circuit held that a provision of the Overseas Differentials and Allowances Act governing the grant of a "danger pay allowance" for federal employees was "money-authorizing," and not money-mandating. *Id.*  This was so, because the relevant provision established a framework under which the heads of agencies could elect to pay a "danger pay allowance," in their discretion. *Id.*

In this case, section 5754 authorizes OPM to decide whether or not to authorize payment of retention bonuses, using the qualifying word "may":

> [OPM] *may* authorize the head of an agency to pay retention bonuses to a group of employees in 1 or more categories of positions in 1 or more geographic areas, subject to the requirements of subsection (b)(1) and regulations prescribed by [OPM], if there is a high risk that a significant portion of the employees in the group would be likely to leave in the absence of retention bonuses.

5 U.S.C. § 5754(c) (emphasis added).

Therefore, whether OPM authorizes an agency to pay retention bonuses is a matter of discretion.  Specifically, section 5754 provides that OPM "may" authorize an employing agency to pay retention bonuses, if the employing agency determines that an employee possesses "unusually high or unique qualifications," or if the employing agency determines that either an employee or a group of employees would be likely to leave federal employment in the absence of a retention bonus.  5 U.S.C § 5754(b), (c).  Such a determination is left to the discretion of OPM, even if the agency determines that those conditions have been met. *See* 5 U.S.C. § 5754(b) (providing that OPM "*may* authorize" payment of retention bonuses if the employing agency determines statutory requirements are met (emphasis added)), (c) (same).

The text of subsections (d)(1)[11] and (d)(3)(A)[12] of section 5754 further require that the employee enter into a "written service agreement" with the agency before payment of a retention bonus, unless the bonus is paid in biweekly installments; the statute, however, does not "compel" payment, if an employee enters into the service agreement. *See Doe*, 463 F.3d at 1324 (holding that the presumption of discretion created by the use of the word "may" can be overcome if the statute "compels payment once certain conditions are met").

Finally, section 5754 specifies the amount any retention bonus may not exceed—either 25% of the employee's basic pay if the retention bonus is based on "the unusually high or unique qualifications of the employee," under subsection (b), or 10% of the employee's basic pay if the retention bonus is based upon "a high risk that a significant portion of employees [in a certain geographic area] would be likely to leave in the absence of retention bonuses," under subsection (c). *See* 5 U.S.C. § 5754 (e)(1)(A)–(B). Consequently, the text of section 5754 does not, by itself, overcome the "presumption of discretion," because it merely authorizes the payment of money, provided that OPM and the employing agency conclude that certain conditions have been met. *See Acevedo*, 824 F.3d at 1370; *see also Doe*, 463 F.3d at 1324.

A money-authorizing statute that use the permissive word "may," however, can still have a money-mandating effect when the statute is read in combination with its implementing regulations and formal agency policy. *See Roberts*, 745 F.3d at 1166. In *Roberts*, the United States Court of Appeals for the Federal Circuit held that the Overseas Differential and Allowances Act, 5 U.S.C. § 5923, and implementing regulations, promulgated by the Department of State and the Department of Defense, and an Order issued by a Marine Corps Commander ("the Order"), together evidenced that the Overseas Differential and Allowances Act was money-mandating. *Id.* This was because the Order compelled payment under the Overseas Differential and Allowances Act when certain conditions were met, even though that Act and implementing regulations used discretionary language. *Id.*

In this case, the OPM implementing regulations, 5 C.F.R. §§ 575.301–314, do not indicate that section 5754 is money-mandating. Instead 5 C.F.R. §§ 575.301–314 grant discretion to the agency to determine whether to pay or terminate retention bonuses. *See* 5 C.F.R. § 575.301 (providing purpose of subpart and stating that "[a]n agency *may* pay a retention [bonus]" under 5 U.S.C. § 5754 when conditions specified by regulations are met); 5 C.F.R. § 575.303(a)(4) ("[A]n Executive agency *may* pay a retention [bonus] to a current employee who holds . . . a position as a [LEO.]"); 5 C.F.R. § 575.305(b) (stating that an agency "*may* pay" a retention bonus to a group

---

[11] 5 U.S.C. § 5754(d)(1) provides: "Payment of a retention bonus is contingent upon the employee entering into a written service agreement with the agency to complete a period of employment with the agency." 5 U.S.C. § 5754(d)(3)(A) provides, however, that: "Notwithstanding paragraph (1), a written service agreement is not required if the agency pays a retention bonus in biweekly installments and sets the installment payment at the full bonus percentage rate established for the employee with no portion of the bonus deferred."

[12] 5 U.S.C. § 5754(d)(3)(A) provides: "Notwithstanding paragraph (1), a written service agreement is not required if the agency pays a retention bonus in biweekly installments and sets the installment payment at the full bonus percentage rate established for the employee with no portion of the bonus deferred."

of employees if they possess "unusually high or unique qualifications" or there is otherwise a "high risk that a significant number of the employees in the group would be likely to leave" in the absence of a bonus); 5 C.F.R. § 575.306 (stating that "[a]n authorized agency official *retains sole and exclusive discretion*, subject only to OPM review and oversight to determine" whether the conditions for a bonus payment set by 5 C.F.R. § 575.305 are met); 5 C.F.R. § 575.308(a) ("An agency, in its *sole and exclusive discretion*, subject only to OPM review and oversight, *may* approve a retention [bonus] for an individual or group or category of employees using the approval criteria in § 575.306") (emphasis added).

Most significantly, 5 C.F.R. § 575.311 allows an agency to "terminate unilaterally" a retention bonus "based solely on the management needs of the agency, even if the conditions giving rise to the original determination to pay the incentive still exists." 5 C.F.R. §§ 575.311(a)(3), (f)(4). This subsection expressly states that "the reduction or termination of a retention incentive under this section *is not grievable or appealable*." 5 C.F.R. § 575.311(g) (emphasis added). Therefore, even if an employee fulfills all the conditions precedent to receiving a retention bonus, nevertheless the agency is under no obligation to pay or continue paying that bonus. *See id.*; *compare id. with* 5 C.F.R. § 530.303(c) ("An agency *must* pay the applicable special rate [under 5 U.S.C. § 5305] to any employee who meets the coverage conditions established by OPM[.]") (emphasis added).

In this case, the VA's implementing regulations, as provided in the VA Handbook, also do not use money-mandating language. *See, e.g.*, VA Handbook pt. VI, ch. 3, § 1(a) ("Retention [bonuses] *may* be used to retain full-time or part-time employees . . . . These incentives are authorized under 5 U.S.C. [§] 5754 [and by] 5 CFR part 575, subpart C, and the provisions of this chapter."). The VA Handbook sets forth the agency retention incentive plan, that states that "[s]ubject to the requirements in this chapter, approving officials *may* authorize individual retention [bonuses] of up to 25 percent of an employee's rate of basic pay or group incentives up to 10 percent of an employee's rate of basic pay." VA Handbook pt. VI, ch. 3, § 1(b) (emphasis added). The VA Handbook consistently uses "may" to indicate that a retention incentive is conditioned on agency discretion. *See, e.g.*, VA Handbook pt. VI, ch. 3, §§ 6(a), 7(b) ("Retention incentives *may* be authorized for current employees serving in full-time or part-time appointments . . . . A retention incentive *may* be authorized for an employee or group of employees whose retention is essential[.]") (emphasis added). The Handbook also affords the approving official discretion in terminating a retention bonus: "An approving official may unilaterally terminate a retention incentive based solely on the management needs of VA. . . . The termination of an incentive is not grievable or appealable." VA Handbook pt. VI, ch. 3, §§ 13(a), (d).

Nevertheless, despite the permissive language in both the OPM regulations and the VA Handbook, section 5754 could be money-mandating, as applied to Plaintiff, if the VA Hospital's Group Authorization for retention bonuses mandated payment for the period for which Plaintiff seeks back pay. *See Roberts*, 745 F.3d at 1166 (holding that Overseas Differential and Allowances Act was money-mandating because the Marine Corps Order mandated payment under certain conditions); *see also* 5 U.S.C. § 5754(d)(3)(B) ("If the agency pays a retention bonus [on a biweekly basis] and makes a determination to terminate those payments . . . the employee shall continue to be paid the retention bonus through the end of the pay period[.]"). It was for this reason that the court ordered the Government to produce the VA Hospital's Group Authorization policies. *See Hindman*, No. 16-257, 2017 WL 104489, at *1. But, the Government could not locate a VA Hospital Group Authorization for retention bonuses that applied to the period for which Plaintiff

15

requests back pay, *i.e.*, between April 1, 2010 and November 20, 2011. Gov't Sub. at 1–2 (explaining that "the Government . . . conducted a search of its records" and that "each of [the documents identified] post-date the time period" for which Plaintiff seeks back pay).

The Government did locate and provide a "Group Retention Incentive *Request*," that was filed in order to request approval for a 10% group retention bonus for LEOs at the VA Hospital. Gov't Sub. Ex. at 1–2 (emphasis added); *see also* 5 U.S.C. § 5754(c) (providing that OPM may authorize an agency to pay retention bonuses to a "group of employees"). But, this document was not signed by the requesting official until November 4, 2011. Gov't Sub. Ex. at 1. In addition, the requested group retention bonus was to commence on November 6, 2011, and the bonuses were to be paid on a biweekly basis. Gov't Sub. Ex. at 1 ("[T]he incentive will be paid in bi-weekly installments of equal amounts."). Consequently, the first bonus payment would not have been until November 20, 2011—after the period for which Plaintiff requests back pay elapsed. In other words, the reason that "retention was not made for effective for [Plaintiff] until November 20, 2011" was that the VA Hospital's Group Authorization for retention bonuses did not take effect until that date. *Compare* Pl. Resp. Ex. B (explaining that Plaintiff began to receive retention bonus pay on November 20, 2011) *with* Gov't Sub. Ex. at 1 (evidencing that, under the VA Hospital's Group Authorization, retention bonus payments began on November 20, 2011).

For these reasons, the court has determined that section 5754 is not money-mandating, as applied to Plaintiff.

### 4.    The Government's Motion To Dismiss Pursuant To Rule 12(b)(6).

Because the court does not have jurisdiction over Plaintiff's claims, the Government's RCFC 12(b)(6) Motion is moot.

## IV.    CONCLUSION.

For these reasons, the Government's August 2, 2016 Motion To Dismiss is granted. *See* RCFC 12(b)(1). The Clerk is directed to dismiss Plaintiff's February 24, 2016 Complaint.

**IT IS SO ORDERED.**

s/ Susan G. Braden    
**SUSAN G. BRADEN**
**Chief Judge**